# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL STANFIELD, | § | |
| | § | |
| Plaintiff, | § | NO. _____ |
| | § | |
| v. | § | |
| | § | |
| ROWAN COMPANIES, INC., | § | |
| | § | **(JURY DEMANDED)** |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff MICHAEL STANFIELD ("Plaintiff" or "Stanfield"), respectfully complaining of Defendant ROWAN COMPANIES, INC. ("Defendant" or "Rowan"), and for cause of action shows unto this Court the following:

## I.  INTRODUCTION

1.     Plaintiff was an employee of Rowan for approximately 28 years.  Throughout the years of his employment, he supervised and generally oversaw all of Defendant's hunting and ranch properties in South Texas, including, but not limited to, the Las Pitas Camp and the Los Jaboncillos Ranch.   In April, 2005, Plaintiff suffered a stroke, which left him disabled as defined by the ADA.   However, he was still able to competently perform all of his job duties.  Nonetheless, on October 6, 2006, just short of Plaintiff's 60th birthday, Defendant terminated Plaintiff and replaced him with a younger employee who, upon information and belief, had no experience running hunting camps or ranches.  Defendant was terminated, despite being able to perform every essential function of his job, due to his age and disability.  Defendant's actions cost Plaintiff the ability to receive proper medical treatment, reduced his pension, and eliminated his ability to purchase stock options he had earned, among other damages.  This action seeks

damages, punitive damages, attorneys' fees, expert fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the Laws of the United States.

## II.  PARTIES

2.      Plaintiff MICHAEL STANFIELD is an individual who is a citizen of the United States of America and the State of Texas, and is a domiciled resident of Jim Wells County, Texas. Defendant, ROWAN COMPANIES, INC., is a corporation authorized to do business in the State of Texas, and may be served through its registered agent, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

## III.  JURISDICTION AND VENUE

3.      This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended.  Plaintiff was employed by Defendant ROWAN COMPANIES, INC., a corporation doing business within the territorial jurisdiction of the Court.  As such, this suit invokes federal law and jurisdiction is based upon federal question.

4.      Venue is proper because Plaintiff's employment was based in, and primarily occurred in, Brooks County, Texas and a large majority of the events and transactions giving rise to this action took place in Brooks County, Texas.   Brooks County, Texas is located within the territorial jurisdiction of the Corpus Christi Division of the Southern District of Texas.

## IV.  CONDITIONS PRECEDENT

5.      All conditions precedent have been performed or have occurred.  Plaintiff timely filed a charge of discrimination on the basis of age and disability discrimination with the Equal Employment Opportunity Commission ("EEOC").  On August 28, 2008, the EEOC mailed a

Notice of Right to Sue, and this claim is timely as Plaintiff is filing this suit within ninety (90) days of receiving his Notice of Right to Sue.

## V. FACTUAL BACKGROUND

6.      Beginning in 1978 and continuing until he was involuntarily retired by Defendant on October 6, 2006, Plaintiff was employed by Defendant in Brooks County, Texas.  Plaintiff was responsible for establishing, maintaining and generally overseeing hunting leases and lodge and ranch operations for Defendant.  Plaintiff's primary job responsibility was overseeing the Las Pitas Camp, which was used by Defendant as a hunting lease.  Plaintiff also oversaw the Los Jaboncillos Ranch until Defendant sold it in 2005, and other properties owned by Defendant in South Texas.  Defendant's properties will collectively be referred to as the "Properties."

7.      Plaintiff's specific duties included, but were not limited to, employing and supervising personnel to perform upkeep on the Properties, ensuring the Properties were sufficiently stocked with supplies, overseeing the hunting guides, and ensuring all persons utilizing the Properties were authorized.  Any physical work Plaintiff did was by choice, not duty or obligation.  From the time he began working for Defendant in 1978 until his forced retirement, Plaintiff's job description was never changed or altered by Defendant.

8.      As the primary supervisor for the Las Pitas Camp, it was Plaintiff's responsibility to see that all other employees performed their duties and that everything was in order when guests arrived for each hunt.  Each hunt had a host whose responsibility was to entertain the guests.  It was never Plaintiff's obligation or responsibility to entertain guests.  Plaintiff was to see that the camp, lodges, kitchen, and dog kennels were kept in working order.  Plaintiff also acted as a liaison between the company and the landowner and ensured that no hunting violations occurred.

9.      With Defendant's consent, Plaintiff hired an assistant manager and eight to ten other employees to perform the necessary maintenance and daily upkeep of the hunting camp.

Plaintiff was the supervisor for each of these employees, and at the time of Plaintiff's termination, most of the employees had been working under Plaintiff's supervision for over ten years. They were well-trained in mowing the yard, working a weed-eater, chain saw, cleaning the flower beds, cleaning the dog kennels, and cleaning the game that was killed.

10.     During Plaintiff's employment with Defendant, Plaintiff's immediate Supervisor, Mr. C. W. Yeargain never once told Plaintiff that Defendant or any guest was unhappy with Plaintiff's job performance. Throughout the term of his employment, Plaintiff routinely received increases in pay and two bonuses each year. In fact, just four months before being terminated, Plaintiff received a 6% merit increase.

11.     In April, 2005, Plaintiff suffered a stroke, which left him with certain physical disabilities. His mental abilities were not affected. Even from his hospital bed, with the help of his assistant manager, he was able to ensure that the camp operations continued unchanged and unaffected. Shortly after Plaintiff arrived home from the hospital, he hired a driver for himself so he could go to the camp and ensure that everything was running smoothly. Plaintiff paid for this driver out of his own pocket for several months. Plaintiff's driving privileges were never suspended due to his stroke. Plaintiff simply chose not to drive. Upon renewing his driver's license, Plaintiff passed both the written and driving tests.

12.     In approximately July, 2006, Defendant approached Plaintiff and informed him that he was being replaced. Plaintiff was specifically told by Defendant that he was being replaced because he had suffered a stroke and Defendant was concerned about Plaintiff's present physical condition. Defendant did not identify any particular job responsibilities Plaintiff could allegedly no longer perform, or that he was not adequately performing. Further, Plaintiff was never given

a negative performance review by Defendant or reprimanded for failure to satisfactorily perform any of his job responsibilities at any time.

13.     About the only things job-related that Plaintiff had trouble with following his stroke were driving (for a short while) and getting in and out of his truck. As mentioned earlier, Plaintiff remedied the driving issue by hiring a temporary driver at his own cost. Defendant never offered such an accommodation. The second issue was difficult for Plaintiff because at the time he was driving one of the largest trucks on the market (2500 4-wheel Drive lifted with leveling blocks). It was difficult to get in and out of on a daily basis, even before he had a stroke. After the stroke, Defendant never offered to get Plaintiff a smaller truck, an accommodation that would have helped Plaintiff. In fact, Defendant never engaged Plaintiff in an interactive process regarding any reasonable accommodations for his disability.

14.     Plaintiff now drives a smaller vehicle and Plaintiff gets in and out of it without any assistance. Plaintiff was always able to perform his managerial duties. Even from Plaintiff's hospital bed, he was giving instructions to his assistant manager as to what needed to be done at the Properties.

15.     Plaintiff was replaced by Matt Keller, a much younger person than Plaintiff, who had no experience whatsoever in running a hunting camp. After July, 2006, Plaintiff was relegated to a consulting position, but Mr. Keller rarely contacted Plaintiff, and when he did, he usually had one of the other employees make the call. It was readily apparent to Plaintiff that Mr. Keller had no interest in working with Plaintiff.

16.     Despite Defendant's stated reasons for terminating Plaintiff, Plaintiff is quite capable of performing all of his job duties. At the present time, Plaintiff manages a 3500-acre ranch and

has just recently overseen the building of a 4-bedroom guesthouse, skinning room, and several other improvement projects.

17.     Although Plaintiff was told he would be retained until his 60th birthday, Defendant terminated him on or about October 6, 2006, short of his 60th birthday. Terminating Plaintiff prior to his 60th birthday resulted in Plaintiff receiving a reduced pension. Early termination also caused Plaintiff to lose his salary, stock options he had earned, profit sharing, his company vehicle, and other benefits including his bonus.

18.     Defendant also cancelled Plaintiff's life and accident insurance policies other than a $15,000 life insurance policy. Prior to termination, Plaintiff had a $55,900.00 life insurance policy, a $25,000 optional life policy, and a $50,000.00 personal accidental insurance policy. It is virtually impossible to obtain these policies on a person now over 60 years old who has had a stroke, and even if they are available, they are cost prohibitive.

19.     Plaintiff's hospitalization coverage was also greatly reduced from "unlimited" to $500,000.00. Due to this limitation of coverage, Plaintiff must be very selective in the treatments he receives. This is critical to Plaintiff as he is having to choose *not* to receive certain treatments for his medical condition because of cost issues. He also cannot afford access to superior therapeutic technologies that are available and would assist him greatly in his recovery.

20.     Plaintiff was also a signatory and personal guarantor on many different accounts throughout his 28 years with Defendant. Defendant, despite promising to do so, has not removed Plaintiff's name or guaranty from certain accounts. Defendant has been delinquent with payment numerous times, resulting in Plaintiff being the recipient of collection notices or telephone calls. Upon information and belief, Plaintiff believes Defendant's conduct has negatively affected his personal credit.

## VI.   CAUSES OF ACTION

### COUNT ONE—AMERICANS WITH DISABILITIES ACT

21.     The allegations contained in Factual Background, Section V (a), are hereby incorporated by reference.  Plaintiff is disabled or has been regarded as disabled, as defined by the ADA. Plaintiff suffers from physical disabilities, which substantially limits one or more of his major life activities.  He is otherwise qualified to perform the essential functions of a manager at Rowan Companies, Inc.  At all times relevant hereto, Plaintiff was an employee within the meaning of the ADA.  Defendant violated the ADA by intentionally discriminating against Plaintiff because of his disability or by regarding Plaintiff as being disabled.   Defendant failed to provide Plaintiff with an accommodation allowing him to perform his job.

### COUNT TWO—AGE DISCRIMINATION IN EMPLOYMENT ACT

22.     The allegations contained in Factual Background, Section V (b), are hereby incorporated by reference.  Plaintiff is over 40 years of age and is a protected individual under the ADEA.  At all times relevant hereto, Plaintiff was an employee within the meaning of the ADEA. Defendant violated the ADEA by intentionally discriminating against Plaintiff because of his age.

### DAMAGES

23.     By the aforesaid acts and omissions of Defendant, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of past earnings and future earnings, front pay and back pay, interest on back pay and front pay, employment benefits in the past, and employment benefits in the future, liquidated and compensatory damages, attorneys' fees, expert fees, costs of suit and other pecuniary loss not presently ascertained, in an amount to be proved at trial.

24.     Plaintiff additionally brings suit for all compensatory damages including but not limited to future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

25.     Plaintiff is informed and believes and thereon alleges that Defendant, by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## ATTORNEYS' FEES

26.     Plaintiff was forced to engage counsel to protect his rights.  Plaintiff is entitled to an award of attorneys' fees, expert fees and costs.  Plaintiff seeks all attorneys' fees in this case which include preparation and trial of this lawsuit; post-trial, pre-appeal legal services; an appeal to the Court of Appeals; making or responding to an application for writ of error to the United States Supreme Court; an appeal to the United States Supreme Court in the event application for writ of error is granted; and post-judgment discovery and collection in the event execution on the judgment is necessary.

## JURY DEMAND

27.     Plaintiff hereby demands a trial by jury on all issues in this Complaint.

## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

A.     Actual damages provided by law;

B.     For liquidated and punitive damages as allowed by law;

C.     Reinstatement in his former position;

D.      For attorneys' fees;

E.      For pre-judgment and post-judgment interest as allowed by law;

F.      For costs of court, costs of prosecuting Plaintiff's claim; and

G.      For such other and further relief to which Plaintiff may be justly entitled, whether at law or in equity.

Respectfully submitted,

**DAVIS, CEDILLO & MENDOZA, INC.**
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas  78212-3135
Telephone:  (210) 822-6666
Telecopier:  (210) 822-1151

By:                                  
        DAVID S. ANGULO
        State Bar No. 24001659
        STEVE A. CHISCANO
        State Bar No. 24001882

*ATTORNEYS FOR PLAINTIFF MICHAEL STANFIELD*